**William LUSK, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 11730.**

United States Court of Appeals
Seventh Circuit.

Nov. 14, 1957.

Rehearing Denied Jan. 31, 1958.

William Lusk, pro se.

Charles K. Rice, Asst. Atty. Gen., S. Dee Hanson, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, I. Henry Kutz, Attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

This appeal from the Tax Court involves the alleged liability of taxpayer, William Lusk, for deficiencies in income taxes for the years 1942 to 1947, inclusive. Fraud penalties were assessed for the years 1942 through 1945, and negligence penalties were assessed for the years 1946 and 1947. Taxpayer's divorced wife Lillian, did not join in the petition for a review of the Tax Court's decision.

In this case we are confronted with an unfortunate situation. Taxpayer is a layman, apparently with little formal education. He acted as his own attorney before the Tax Court although he was several times advised to employ an attorney. He had discharged his accountants some time prior to the Tax Court hearing because, he asserts, they charged $1,000.00 per month "just for conferences." He has the physical handicap of deafness. It is apparent from the record that at various times in the Tax Court proceeding, he did not fully realize just what was going on. Certainly he was not in a position to effectively conduct his part of the proceeding but, of course, it was his decision to appear as his own counsel.

Taxpayer also acted as his own attorney in this Court. We permitted him to file a long typewritten brief. We also permitted him to file a typewritten reply brief which was thirty-two pages in excess of the limit prescribed by Rule 17 (4) (e) of this Court, 28 U.S.C.A. On taxpayer's motion, we dispensed with oral argument. We have carefully examined the record as well as the extensive briefs filed.

During the taxable years here involved, the Lusks resided in Cicero, Illinois. Lusk was engaged in the business of selling automobiles, boats, motor cycles and farm machinery under the name of Cicero Boat and Motor Cycle Sales. In 1946 the name of the business was changed to "Outdoor Equipment Sales." At no time during the years in question did Lusk have more than one employee who, apparently, did no bookkeeping. He also operated a small farm in Wayne County, Illinois, about 270 miles distant from Cicero. This farm was purchased by taxpayer in 1938 for the sum of $4,000.00, and he spent $1,-200.00 improving and furnishing it. In

1943 he acquired an additional twenty acres adjoining the original farm for $2,500.00 and spent $300.00 for improvements.

In 1937, taxpayer purchased a home in Cicero, Illinois, for $5,250.00. Prior to 1942, $2,000.00 had been spent on furnishings. During the taxable years $250.00 was spent in fixing a room in the basement which was thereafter rented.

Taxpayer rented a safe deposit box at the Cicero State Bank in August of 1937. He suggests he had a loss of confidence in the safety of bank deposits. Taxpayer's principal complaint seems to be that the Government, in computing taxes based on the net worth theory, did not credit him at the beginning of the period here in question with the amount of currency he had in his deposit box. He admits that over the years he used currency of large denominations but offers the unique explanation that such was necessary because his small-sized bank deposit box was not large enough to hold the amount of currency he owned, if it were in small denominations.

Taxpayer claims that funds used by him for investment in stocks and other property resulted from thirty years of hard work and saving; that he lived frugally and did not smoke, drink, gamble or have other extravagant habits. He pointed out that he operated his farm and used farm products to lighten his living expenses; that he did his own mechanical work and was able to live with a minimum of expenditures.

Claiming that taxpayer kept inadequate records to reflect his true income for the years 1942 through 1945, the Commissioner, by use of the excess expenditures and net worth methods, computed taxpayer's taxable income for those years and assessed deficiencies. The income tax was fixed at $46,060.19 and the additions, including fraud penalties, at $23,029.61. However, the income for the years 1946 and 1947 were computed by the Commissioner on a different basis. Taxpayer's records for those years consisted of bills, invoices, sales slips, a so-called police book to record purchase and sales of used cars, and consecutively numbered adding machine slips showing sales. On the basis of such records the Commissioner determined taxpayer's net income for 1946 and 1947 to be $19,817.18, and determined that taxpayer's under-stated net income was $11,662.44. The income tax for these two years was fixed at $2,790.-15 and negligence penalties of $139.51 were assessed.

Taxpayer insists that exactly the same kind of records were kept in the period of 1942 through 1945 as in the following two years, but that the agents and other representatives of the Treasury Department never requested the production of such records. During the Tax Court proceeding, taxpayer moved to have the Court consider newly discovered evidence which included the records above described for the period from 1942 through 1945. The motion was denied. Undoubtedly, this motion was not timely made but this incident again indicates the great handicap the taxpayer placed upon himself by insisting on acting as his own attorney.

Taxpayer complains that under duress he signed waivers extending time for the assessment of income taxes for the years 1946 and 1947, because of the threats of the agents to "pull a figure out of the sky" if he refused to sign. Taxpayer claims that after his signature on one of these waivers he added the words "This is not my free and voluntary act."

There is some indication both in the findings of the Tax Court and in the brief of Government counsel here that the approach made was not entirely objective. Both the findings and the brief state that the taxpayer "received oil royalties and rental income * * *." This statement, although technically correct, is misleading because the record shows the "oil royalties" consisted of a $24.00 payment each year on a lease for possible future drilling, and as far as we can ascertain the "rental income" was the amount received by renting a basement room.

594

The Tax Court made the following finding: In 1943, taxpayer acquired a building in Cook County, Illinois, for $450.00, and made improvements thereto at a cost of $600.00. In 1944 he purchased a frame building in Cicero for $3,-250.00, and in 1945 a brick store building for $5,100.00. Title to the latter was taken in the name of his sister-in-law. Taxpayer and his wife never received anything by way of inheritance or gift, and in 1933 had no real estate and very little other assets. The Court also found that the net worth of taxpayer and wife did not exceed $53,630.17 on December 31, 1941.

Taxpayer maintained a brokerage account during the taxable years and in 1946 and 1947 he and his wife opened another such account in their joint names. The Tax Court found a total deposit in these accounts of $69,065.53 for the years 1943 through 1946. It also found that on December 31, 1946, taxpayer and wife owned securities for which they had paid $119,404.67, while on December 31, 1941, the securities owned by Lusk had a cost value of $25,-679.52.

■ The Tax Court found that except for the items of depreciation and long term capital gains, for which it made adjustments, the taxpayer had not offered any proof to show that the Commissioner's computations were erroneous, and therefore, upheld same. The Commissioner's computations are *prima facie* correct and the taxpayer has the burden of proving that such determinations are incorrect, Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336, or arbitrary. Marcella v. Commissioner of Internal Revenue, 8 Cir., 222 F.2d 878, 879.

■ It is now well settled that where adequate records are not available during a taxable period, the Commissioner may determine the amount of income received by a taxpayer upon any reasonable basis. The net worth basis has been approved in criminal prosecutions. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150;

Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202. It follows that in appropriate situations the same method may be used in civil cases. Bodoglau v. Commissioner, 7 Cir., 230 F.2d 336, 339. Another method is by using as a primary guide the amount of taxpayer's expenditures during the year following each of the taxable years and substantiating the accuracy of the compilations by use of the net worth method. Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336. This was the method used in the case at bar.

■ There is substantial evidence in this record to sustain the Tax Court's findings on the amount of taxpayer's income in the taxable years. It is clear the taxpayer has not met the burden to show that such findings are clearly erroneous.

■ We have been somewhat concerned with reference to the finding of fraud during the years 1942 through 1945. On this question there is no presumption of correctness attaching to the Commissioner's findings. The Commissioner has the burden of proving fraud by clear and convincing evidence. Goldberg v. Commissioner of Internal Revenue, 5 Cir., 239 F.2d 316, 320.

■ In making the finding that in each of the years 1942 through 1945 at least part of the deficiency was due to fraud with intent to evade tax, the Tax Court relied, in part, on the failure by taxpayer to report the receipt of certain dividends in the year 1944. The amounts of these payments were $675.00, $300.00, $100.00 and $5.00, respectively. Also for failing to report a capital gain of $416.19 on the sale of some stock. The finding might just as well have been that such omissions were due to negligence, for in the same period taxpayer reported the receipt of a $1,200.00, dividend which, apparently, was tax exempt. However, it was the function of the Tax

Court, and not ours, to make the finding of whether at least part of the deficiency for 1942 through 1945 was due to fraud with intent to evade tax. Such a finding is one of fact, and the Tax Court's determination with respect therewith must stand if supported by substantial evidence. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751; Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L.Ed. 78; Halle v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 500, 504; Owens v. United States, 8 Cir., 197 F.2d 450. We hold that such finding was not clearly erroneous.

Taxpayer argues that the Commissioner's statutory notice of deficiencies sent to him and his wife on February 15, 1952 was mailed more than three years after their joint returns for 1942 through 1945 were filed, and that the three-year statute of limitations had run. Taxpayer's position would be sound were it not for the finding of fraud with intent to evade tax for the years 1942 through 1945. Section 276(a) of the 1939 Code, 26 U.S.C.A. § 276(a) provides that in the case of a false or fraudulent return to evade taxes the assessment and collection of such taxes may be made at any time regardless of the statutory limitation. The Tax Court was correct in holding the statute of limitations had not run.

As to the years 1946 and 1947, taxpayer and wife signed waivers extending the time for assessing the income tax until June 30, 1952. True, taxpayer charges duress and threats caused him to sign the waivers, but we cannot accept his unsupported statements with reference thereto in view of the Tax Court's approval of the validity of the waivers.

Judgment affirmed.

FINNEGAN, Circuit Judge (concurring).

Skilled advocacy is not a substitute for operative facts though that art may supply emphasis and delicate nuances of evidence clearly established by the record. I join in this opinion, but would make it clear that Lusk's *pro se* appearance here and in the tax court influenced the result reached, on appeal, only so far as a court indulges a litigant, unskilled in the law, who represents himself.