Robert L. BENDER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

CHECKER TAXI COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 12208, 12209.

United States Court of Appeals
Seventh Circuit.

July 1, 1958.

Suel O. Arnold, Milwaukee, Wis., Carl A. Flom, Madison, Wis. (Arnold, Philipp & Murray, Milwaukee, Wis., of counsel), for petitioner.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C. (Lee A. Jackson, Melva M. Graney, George W. Beatty, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before DUFFY, Chief Judge, and MAJOR, Circuit Judge (Retired), and PLATT, District Judge.

DUFFY, Chief Judge.

We have here for review two decisions of the Tax Court dated September 23, 1957. The cases were consolidated for trial by the Tax Court.

Robert L. Bender and Esther C. Bender, his wife, are residents of Madison, Wisconsin. They each filed individual income tax returns for the years 1942–1947, and they filed a joint return for 1948. Checker Taxi Company, hereinafter called "Checker," filed original and amended returns for the years 1942–1948.

The Tax Court held that false and fraudulent returns were filed for the years 1942 to 1945, inclusive, and for the year 1947 by Checker and by Robert Bender; that Robert Bender and Esther C. Bender each received taxable income from Checker for each of the years from 1942 to 1948, inclusive; and that deficiencies for each of the years 1942 to 1947, inclusive, of Checker and of Robert L. Bender were due to fraud with intent to avoid tax. Taxpayers claimed in the Tax Court that deficiencies were barred by the Statute of Limitations. Waivers had been executed for the years 1946 and 1948.

Robert and Esther Bender were the original incorporators of Checker. Of the one hundred shares of capital stock, Bender owned ninety, Esther owned nine and a qualifying share was held by one Hackert. In November, 1947, the capital stock was increased to six hundred shares. Bender owned four hundred ninety five shares, Esther one hundred

four shares and Hackert one. Although Esther was the president of the corporation, she had very little to do with the operation of Checker from 1942 through 1948. Robert managed, controlled and directed the operations of Checker during the years here in question, and, as secretary-treasurer of the corporation, was the sole active officer.

Checker was engaged in the business of operating taxicabs, school buses, airline limousines, and other vehicles in and about Madison, Wisconsin. During the years here in question, the business of Checker increased rapidly. In 1942, Checker had three taxicabs, three school buses, three pickup trucks and one moving van. By the end of 1948 it owned twenty-four taxicabs, seven school buses, three airline limousines, three pickup trucks and one moving van. Checker's Equipment Account increased from a net of $9,334.80 on January 1, 1942, to $92,224.45 as of December 31, 1948.

Checker maintained several business bank accounts in the American Exchange Bank in Madison. These accounts were intended for the deposit of receipts from the operation of Checker. In the same bank there was also an account in the name of Esther C. Bender. This account existed prior to 1942. It was opened originally when the business was small and the Benders' credit standing precarious, in order that some funds might be available if creditors should attach Bender's funds. All of the deposit slips for funds deposited in this account were made out by Robert Bender and he personally made the deposits. However, only Esther was authorized to draw checks on this account. She often signed several checks in blank and gave them to Bender to fill in.

During the years 1942–1948, inclusive, Robert Bender followed the practice of depositing a considerable portion of the receipts from the operations of Checker into the Esther C. Bender checking account. Many of such deposits were not recorded in the cash receipts journal or in any other books kept by Checker.

Such deposits were not included in the gross income in Checker's tax returns.

Prior to 1938, Bender personally maintained the bookkeeping records of Checker, although he had no formal training in accounting and knew very little about bookkeeping. In 1938, Bender hired Wilbur S. Grant, a local certified public accountant, to perform bookkeeping services for Checker, and to prepare Checker's tax returns. No audits ever were made, although in a letter written February 12, 1947, Grant referred to Checker's books being kept "on a continuous audit basis." Grant died prior to the time of the Tax Court hearing.

When Grant was hired in 1938, he set up a double entry bookkeeping system to replace the old single entry system. A cash receipts daybook was maintained which book constituted the original record of entry of receipts of the business. All income from the business was supposed to be entered in this book. In 1941, Frieda Poster, a sister of Robert Bender, was employed to maintain the cash receipts daybook, and to record therein all amounts received by Checker from its various operations. This book was kept in Checker's office. One of Grant's employees instructed Frieda with reference to the method of keeping such records. The book was inspected about once a month by a staff member of Grant's office, and periodically, it was turned over to Grant for the purpose of recording the receipts shown therein in the permanent records of Checker.

In the years 1942 to 1947 Bender deposited in Esther's bank account funds of Checker totaling over $160,000.00. The largest amount in any one year was in 1945, when over $35,000.00 was thus diverted. Although the amounts differed from year to year, Bender followed a consistent practice of diverting income of Checker into his wife's bank account without disclosing the practice to his accountants or to his bookkeeper. It is clear from the record that Frieda did not know Robert Bender was diverting Checker's funds into his wife's account.

The principal question before us is whether Robert Bender and Checker filed fraudulent income tax returns with the intent to avoid tax. It is urged by Robert Bender for himself and Checker, that when a taxpayer selects a competent tax expert and requests him to prepare income tax returns, the taxpayer has done all that ordinary business care and prudence can reasonably demand. Taxpayers insist that Bender had the right to assume that Grant, as a certified public accountant, would make a proper record of corporate income and would properly prepare the income tax returns. Taxpayers say that Sackett, who was employed by Grant, knew of the Esther Bender account from the very beginning. Taxpayers point out that Grant never furnished them any copies of their income tax returns, and that when they signed same, they did not examine them.

Taxpayers' position is that Bender knew Grant had access to all of the records of Checker and also the cancelled checks and bank statements of the Esther Bender account; that it was Grant's job to see that all of the receipts of Checker were properly entered and accounted for. Bender testified he put all of Checker's money in the bank and figured Grant "would get it." Claiming there was no fraud with intent to evade tax, taxpayers rely upon such cases as Davis v. Commissioner, 10 Cir., 184 F.2d 86, 22 A.L.R.2d 967; United States v. Pechenik, 3 Cir., 236 F.2d 844, and Haywood Lumber & Mining Co. v. Commissioner, 2 Cir., 178 F.2d 769.

■ The burden of proof is on the Commissioner to establish fraud on the part of taxpayers. Fraud must be proved by clear and convincing evidence and the intent to evade tax is a specific intent. On the other hand, a taxpayer's consistent and substantial understatement of income over a period of several consecutive years, taken together with other circumstances, can be clear and convincing evidence of fraud. Rogers v. Commissioner, 6 Cir., 111 F.2d 987, 989.

Taxpayers' condemnation of the services rendered by Grant and his employees is strong. Reference is made to the "malpractice" of Grant. The failure of Grant to have amended returns filed for 1948 after a substantial discrepancy for that year had been discovered, is pointed to as additional proof that it was the accountants and not the taxpayers who were at fault in this case.

It must be conceded that the accounting service rendered was not first class. It might be designated by the inelegant term "sloppy." The Esther Bender account should have excited a greater interest than was shown by those who were keeping the books. True, from 1946 to 1948, inclusive, Du Bois who handled the bookkeeping and accounting, did frequently inquire about the deposits in the Esther Bender account. It should be noted that although the accountants did have for their inspection the cancelled checks from this account, Bender never turned over to them the deposit slips. It was late in 1948 that Du Bois traced a deposit of the Board of Education to Esther's account, and he then, for the first time, became aware that funds belonging to Checker had been deposited in the Esther Bender account. Du Bois was frequently told by Frieda that she understood that the deposits in Esther's bank account came from Bender's savings and Esther's earnings. During the entire period, Esther was steadily employed at wages as high as $150 a month.

■ It is well settled that a taxpayer cannot shift the responsibility for admitted deficiencies to the accountants who prepared his returns if the taxpayer withholds vital information from his accountants, or takes positive action designed to mislead them. Lashells' Estate v. Commissioner, 6 Cir., 208 F.2d 430, 436; Mauch v. Commissioner, 35 B.T.A. 617, 627, affirmed, 3 Cir., 113 F.2d 555.

■ The Tax Court found as a fact, that Checker and Bender each filed false and fraudulent returns for 1942 to 1945, inclusive, and for 1947, and that part of the deficiencies for the years 1942–1947, inclusive, were due to fraud with intent to evade tax. Fraud is a question of fact, and the Tax Court finding is bind-

ing if it is supported by substantial evidence. Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751; Lusk v. Commissioner, 7 Cir., 250 F.2d 591; Bodoglau v. Commissioner, 7 Cir., 230 F.2d 336, 341.

We think there is substantial evidence in this record to support the findings of the Tax Court. Bender knew that none of the earnings of Checker which were deposited by him in his wife's account were recorded in the cash receipts daybook. His usual procedure was that when he received cash from his drivers at a time when Frieda was not present, and when he received checks from customers of Checker's in the mail, which Frieda did not know about, he deposited such sums in his wife's account, but never informed Frieda that such sums had been received. Bender knew that most of the deposits in Esther's account were income which had been diverted from Checker.

Bender deposited the unrecorded receipts in Esther's account with full knowledge that these items were not and would not be recorded in Checker's books. He misled his bookkeeper and his accountants. Once he succeeded in secretly transferring corporate funds to his wife's account, his major problem was over. Bender then could and did use the funds for personal expenses without arousing suspicion. Bender also used the funds for corporate expenses making it appear that the Benders were contributing their personal capital to cover expenses of the corporation which they owned. The accountants believed this as they debited the appropriate asset account and credited the appropriate liabilities accounts which were carried on the corporate books as accounts payable to the Benders.

The tax returns reflected only the income shown in the cash receipts journal maintained by Frieda. Bender showed extreme care in making deposits in the various corporate accounts. It stretches credulity too far to say that a consistent pattern for six years of concealment of corporate assets in his wife's account was done innocently by Bender.

During the six-year period Bender used $43,000 from Esther's account for his own personal use. He made a $4,000 payment on a home. He purchased a hunting lodge. He did not report any of these withdrawals as income in his personal tax return. The omissions of income each year in Checker's returns resulted in lower excess profits tax as well as lower income tax. Bender, as chief stockholder, stood to gain substantially even though indirectly. Bender's fraudulent intent is imputed to Checker of which he was the chief stockholder and only active officer.

The findings of fraud are supported by substantial evidence. The judgment of the Tax Court is

Affirmed.