T.C. Memo. 1996-137


UNITED STATES TAX COURT


ESTATE OF LEON SPEAR, DECEASED, JEANETTE SPEAR,
HARVEY SPEAR AND ROBERT SPEAR, ADMINISTRATORS,
AND JEANETTE SPEAR, Petitioners v. COMMISSIONER
OF INTERNAL REVENUE, Respondent[*]


Docket Nos. 3276-87.[1]        Filed March 19, 1996.



Barry A. Furman, Patrick W. Kittredge, and Michael S. Paul,

for petitioners.

Michael P. Corrado, Ruth M. Spadaro, and James C. Fee, Jr.,

for respondent.

---

[*] This opinion supplements Estate of Spear v. Commissioner,
T.C. Memo. 1993-213, vacated and remanded 41 F.3d 103 (3d Cir.
1994).

[1] Cases of the following petitioners were consolidated:
Estate of Abe Spear, Deceased, Morris Spear, Executor, docket No.
21480-90; Estate of Leon Spear, Deceased, Jeanette Spear,
Administrator, Robert Spear, Administrator, and Harvey Spear,
Administrator, docket No. 21481-90.

SUPPLEMENTAL MEMORANDUM OPINION

COLVIN, Judge:  This matter is before the Court on remand from the U.S. Court of Appeals for the Third Circuit in Spear v. Commissioner, 41 F.3d 103 (3d Cir. 1994), vacating and remanding T.C. Memo. 1993-213.

The issues for decision on remand are:

1.  Whether petitioners had any cash on hand on December 31, 1974.  We hold that petitioners had $200,000 cash on hand on December 31, 1974, instead of zero as determined by respondent.

2.  Whether petitioners are liable for the addition to tax for fraud.  We hold that they are not.

3.  Whether, if petitioners are not liable for the addition to tax for fraud, respondent is barred from assessing tax for the years in issue.  We hold that respondent is barred from assessing tax for 1975, but not for 1976 and 1977.

References to petitioner are to Jeanette Spear.  Section references are to the Internal Revenue Code in effect during the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

## Discussion

A.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213

Jeanette and Leon Spear filed joint Federal income tax returns for 1975, 1976, and 1977.  Respondent determined that petitioners are liable for deficiencies in income tax and additions to tax for fraud as follows:

|       |            | Additions to Tax |
| Year  | Deficiency | Sec. 6653(b) |
|-------|------------|------------------|
| 1975  | $51,271.70 | $25,635.85 |
| 1976  | 157,706.46 | 78,853.23 |
| 1977  | 93,536.23  | 46,768.12 |

Using the net worth plus expenditures method, respondent determined that petitioners had unreported income in 1975, 1976, and 1977.

Petitioner did not comply with an order of this Court to testify at trial.  As a result, we sanctioned petitioners by deeming that respondent made a prima facie showing of certain facts alleged by respondent in paragraph 7 of the amended answer (the deemed facts).  Estate of Spear v. Commissioner, T.C. Memo. 1993-213.  We upheld most of respondent's deficiency determinations and held that petitioners were liable for the additions to tax for fraud.

B.  Estate of Spear v. Commissioner, 41 F.3d 103 (3d Cir. 1994)

Petitioners appealed our decision in docket No. 3276-87. The Court of Appeals vacated our decision and remanded the case with instructions that we decide it without treating respondent

as having made a prima facie showing as to the deemed facts.

Estate of Spear v. Commissioner, 41 F.3d at 117.

The Court of Appeals said:

there are many other places in the opinion that make it
appear that the tax court found sufficient evidence of
net worth and of fraud without relying on the deemed
facts.  Nonetheless, because we are unsure whether the
court relied on these facts and shifted the burden of
proof, and because the consequences to the taxpayers
are so significant, we must assume that the court did
rely on these facts.  We will thus treat the sanction
as one that essentially shifted the burden of proof
(and production) on net worth and on fraud.

Id. at 108-109.

The Court of Appeals limited its discussion of the record

mainly to the facts bearing on the sanctions issue.  Estate of

Spear v. Commissioner, 41 F.3d at 105.  The Court also said:

The [tax] court may, of course, elect to retry the
case.  In that event, it might be well advised to rely
upon Jeanette's videotaped deposition in lieu of her
testimony, although perhaps her emotional state is now
better.  On the other hand, the court may simply prefer
to decide the case on the basis of the existing record,
but absent the "deeming" and its consequences which we
have declared invalid.

Id. at 117.

The Court of Appeals also said with respect to petitioner's

videotaped deposition that "it is difficult to see how anything

more would be forthcoming at a trial."  Id. at 116.  We agree.

Neither side has requested further trial.  We conclude that

further trial is unnecessary.

C.   Whether:  (1) The Absence of Deemed Facts, or (2) the
     Finding by the U.S. Court of Appeals for the Third Circuit
     Relating to Petitioner's Deposition Alters Our Decision
     Relating to the Deficiencies or the Net Worth Method for
     1976 and 1977

     1. Deemed Facts

     We did not consider the deemed facts in our prior opinion
with respect to the deficiencies, the net worth method, or any
issue other than fraud.  Estate of Spear v. Commissioner, T.C.
Memo. 1993-213 (slip op. at 29-30, 33, 55-56).  Thus,
the decision of the Court of Appeals in Estate of Spear v.
Commissioner, supra, that we may not consider the deemed facts,
affects only our findings and conclusions relating to fraud.  We
decide the effect of that opinion on our fraud finding below at
paragraph D.

     2.   Jeanette Spear's Deposition

          a.   Net Worth Method

     Respondent used the net worth plus expenditures method to
determine that petitioners had unreported income in 1975, 1976,
and 1977.  As part of that determination, respondent concluded
that petitioners had no cash on hand on December 31, 1974.

     An essential condition in net worth cases is that the
Commissioner establish with reasonable certainty an opening net
worth to serve as a starting point from which to calculate future
increases in the taxpayer's assets.  Holland v. United States,
348 U.S. 121, 132 (1954).  Although Holland is a criminal case,
it also applies to use of the net worth method in civil tax

cases.  See <u>Hoffman v. Commissioner</u>, 298 F.2d 784, 786 (3d Cir. 1962), affg. in part on this issue T.C. Memo. 1960-160.

Where the Commissioner has determined a deficiency by using the net worth method, we may adjust a determination of opening net worth shown by the trial record to be unrealistic.  <u>Hoffman v. Commissioner</u>, <u>supra</u>; <u>Baumgardner v. Commissioner</u>, 251 F.2d 311 (9th Cir. 1957), affg. T.C. Memo. 1956-112; <u>Potson v. Commissioner</u>, 22 T.C. 912, 928-929 (1954), affd. sub nom. <u>Bodoglau v. Commissioner</u>, 230 F.2d 336 (7th Cir. 1956).  Errors in the net worth method do not invalidate the presumption of correctness attaching to other aspects of the Commissioner's deficiency determination if the determination was not arbitrary. <u>Hoffman v. Commissioner</u>, <u>supra</u> at 788.

We may apply the <u>Cohan</u> rule (enunciated in <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930)), if appropriate, to decide the amount of cash on hand at the beginning of the period to which the net worth method is applied. <u>Bodoglau v. Commissioner</u>, 230 F.2d 336, 340-341 (7th Cir. 1956), affg. <u>Potson v. Commissioner</u>, 22 T.C. 912 (1954).

The Court of Appeals stated, "based on our viewing of the deposition, we find Jeanette's testimony as to the $380,000 cash hoard quite straightforward, and it seems to be credible." <u>Estate of Spear v. Commissioner</u>, 41 F.3d at 114.  In response to that finding, we have carefully reviewed petitioner's videotaped deposition testimony and the entire record to enable us to

reconsider whether petitioners had any cash on hand on December 31, 1974.

Petitioner's testimony gives two possible sources of petitioners' cash on hand on December 31, 1974. One is a cash hoard from 1957; the other is their parking lot business they have conducted since 1956.

Petitioner testified in the deposition that she and her husband had a large cash hoard. She testified that one night in 1957 her husband came home with a bag of money which he said his father, Abe Spear, had given to him. Petitioner's husband's father died soon thereafter. She did not remember whether the bag was bigger or smaller than a grocery bag. She said that she helped him count the money, but he did most of the counting. She testified that the next night he came home with a second bag of money. She said that, combined, both bags contained "[A]bout 360 or 380 or 3 something, that was it." She said that in less than 1 year they put some of the money in a safety deposit box. She said she did not remember how long the rest of the money was in their house.

Another possible source of petitioners' cash on hand on December 31, 1974, based on petitioner's deposition, is petitioners' parking lot and other businesses. Petitioner testified in her deposition that her husband, Leon Spear, routinely handled cash and received cash from petitioners' parking lot business, and used cash to pay for expenses such as

parking lot maintenance and improvements. Petitioners began to operate parking lots in 1956. Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 5). Petitioner's husband sold used cars before that. Id. Petitioner testified that her husband dealt extensively in cash in connection with the parking lots. We believe that petitioners accumulated cash from the parking lot business and used it to conduct their business.

Petitioner testified that she and her husband used cash from the cash hoard for their parking lot business. She said they used a lot of the cash to develop and expand their parking lot at 8th and Race Streets. She also said they used some of the cash for the parking lot petitioners created after they bought and demolished the Skipper Hotel and for the PennDOT lots that petitioners acquired in 1973. Petitioner also testified that they bought a few properties between 1957 and 1970.

Petitioner had no written records of how she and her husband used the cash. She testified that she only took money from, and never put money into, the cash hoard. She said that she had no idea how much of the cash was left at the beginning of 1975, but she said there was some money left. She testified that a rough guess was that the corporation owed petitioners a "couple of hundred thousand dollars" in 1975. She said the cash hoard was pretty well down by 1977.

The Court of Appeals limited its discussion of the record primarily to the facts bearing on the sanctions issue. Estate of

Spear v. Commissioner, 41 F.3d at 105.  Thus, in evaluating petitioner's testimony, we must also consider other evidence in the record.

Abe Spear borrowed $1,000 from one of his daughters in March 1954 to give to another daughter to help her with a downpayment to buy a house.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 7).  Abe Spear had about $26,000 in mortgages on properties which were worth about $80,000 when he died.  Id.  He paid some of his bills late and he died with some of his deceased wife's jewelry in a pawn shop.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 37-38).  Abe Spear named Leon Spear's brother and brother-in-law, not Leon Spear, as executors of his will, which suggests that he did not favor Leon Spear over them to the extent of making a secret $380,000 cash gift to him as petitioners claim.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 37).  Leon Spear filed exceptions to the accounting of his father's estate alleging missing items.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 38).

Petitioner testified that petitioners applied for a mortgage and did not list cash as an asset.  Petitioners first claimed that they had a cash hoard in January 1983, several years after their first interview with respondent's agent in 1977.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 39).  Petitioners claim that they did not deposit the cash in banks

because they distrusted banks; however, they used banks extensively.  Id. at 39.

Giving appropriate weight to the finding of the Court of Appeals that petitioner's testimony relating to the cash hoard was quite straightforward and appeared to be credible, 41 F.3d at 114, and the entire record, we conclude that petitioners used a considerable amount of cash throughout the years before 1975 to operate their business, and that they had a significant amount of cash on hand on December 31, 1974.  We think the parking lots and petitioners' other businesses provided a likely source of a significant amount of cash on hand on December 31, 1974.  Based on the foregoing discussion, and the entire record, we find that petitioners had $200,000 cash on hand on December 31, 1974.  However, the lack of records showing the amount of petitioners' cash on hand, the evidence in the record suggesting that Abe Spear was not wealthy, the fact that Abe Spear chose one of Leon Spear's brothers to be the executor of his will, and the fact that Leon Spear contested his father's will lead us to conclude that petitioners did not receive $380,000 in cash from Abe Spear in 1957.

Petitioners argue that some of the money they received from their corporations during the years at issue are repayments of loans they made to the corporations before the years at issue. Petitioner testified in her deposition in this case that the loans existed; however, she testified in an earlier deposition in

petitioners' lawsuit against their accountant, Gil Brown, that she did not recall any specific incidents of lending money to the corporation. Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 41). Petitioners had no documents which corroborate their contention that the loans were made; there are no notes evidencing the loans or records of payments on the loans; the loans were not shown in the books and records of petitioners' corporations; and there is no evidence that collateral was requested or interest was charged. Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip op. at 40-42).

To show that funds received were loan repayments, petitioners must show that the loans were bona fide. This depends on all the facts and circumstances; generally no one fact is determinative. John Kelley Co. v. Commissioner, 326 U.S. 521, 530 (1946). Petitioner did not testify that petitioners intended their expenses for their parking lots to be loans. There is no evidence that there were any fixed maturity dates for repayment of the money petitioners gave to the corporations. Considering petitioner's testimony and the entire record, we continue to conclude that petitioners did not make bona fide loans to their corporations.

We do not conclude that our finding that petitioners had $200,000 in cash on December 31, 1974, means that respondent's determination of petitioners' opening net worth failed to be made with the requisite "reasonable certainty". Holland v. United

States, 348 U.S. 121, 132 (1954).  The Commissioner's use of the net worth method may be valid even though the Commissioner did not properly recognize the taxpayer's opening net worth, so long as the determination was not arbitrary.  Hoffman v. Commissioner, 298 F.2d 784, 786 (3d Cir. 1962); Baumgardner v. Commissioner, 251 F.2d 311 (9th Cir. 1957); Bodoglau v. Commissioner, 230 F.2d 336 (7th Cir. 1956).  Respondent was not arbitrary in applying the net worth plus expenditures method here.

D.   Whether Petitioners are Liable for Fraud Without
     Consideration of the Deemed Facts

In our prior opinion, we considered the deemed facts and the entire record in holding that respondent clearly and convincingly proved that petitioners are liable for the addition to tax for fraud under section 6653(b) for 1975, 1976, and 1977.  Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip. op. at 55-56). The mandate of the Court of Appeals instructs us not to treat respondent as having made a prima facie showing with respect to the deemed facts as a sanction for petitioner's failure to testify at trial.  This changes our analysis significantly.  We no longer find as facts the allegations in subparagraphs k, l, o, p, r, s, t, u, v, w, y, aa, ab, ac, ad, and ae of paragraph 7 of respondent's amended answer because they are not adequately supported by the record.[1]  Assertions in the

---

[1] Paragraphs k, l, o, p, r, s, t, u, v, w, y, aa, ab, ac,
                                        (continued...)

_____

(...continued)
ad, and ae of paragraph 7 of respondent's amended answer provide:

    (k)  Petitioners refused to make available to
agents of the respondent any records concerning their
individual income tax liabilities for the taxable years
1975, 1976 or 1977.

    (l)  Petitioners furnished only incomplete records
of their corporations Ezy Parks, Inc., Tumble Down,
Inc. and Ezy Parks II, Inc. to agents of the respondent
for the taxable years 1975, 1976 and 1977.

            *   *   *   *   *   *   *

    (o)  Petitioners did not have available on
December 31, 1974 any cash on hand which was not
deposited in one of petitioners' bank accounts.

    (p)  There is attached hereto as Exhibit A, which
is incorporated herein by reference and made a part
hereof, a statement summarizing petitioners [sic] net
worth increases and non-deductible expenditures for
each of the taxable years 1975, 1976 and 1977.

            *   *   *   *   *   *   *

    (r)  Petitioners owned all of the stock and
completely controlled Jay Faunce, Inc.

    (s)  Jay Faunce, Inc. did not actively conduct any
business activities at any time.

    (t)  The sole function of Jay Faunce, Inc. was to
acquire and hold title to real estate properties
acquired by petitioners with unreported income.

    (u)  Petitioners used unreported income to acquire
eight real estate properties in their names or the name
of a wholly owned nominee corporation.

    (v)  During the taxable years 1976 and 1977,
petitioners acquired at least six real estate
properties which they concealed by holding title for
these properties in the name of their nominee
corporation Jay Faunce, Inc.

                                    (continued...)

other subparagraphs in paragraph seven are amply supported by the record,[2]

_____

(...continued)

    (w)  Petitioners deposited unreported income into 34 bank accounts in twelve different banks during the taxable years 1975, 1976 and 1977.

        *   *   *   *   *   *   *

    (y)  Petitioners' adjusted gross income as determined by petitioners' net worth increases and non-deductible expenses was $127,762.80 for 1975, $322,213.21 for 1976, and $211,173.54 for 1977.

    (aa)  Petitioners' correct taxable income was $121,494.80 for 1975, $314,232.21 for 1976, and $206,568.44 for 1977.

    (ab)  Petitioners with fraudulent intent to evade tax substantially understated their income for the taxable years 1975, 1976 and 1977.

    (ac)  Petitioners fraudulently with intent to evade tax failed to report $93,071.80 of taxable income for 1975, $276,309.21 of taxable income for 1976, and $148,035.54 of taxable income for 1977.

    (ad)  Petitioners fraudulently with intent to evade tax understated their tax liabilities by $51,271.70 on their 1975 income tax return, by $157,706.46 on their 1976 income tax return, and by $93,536.23 on their 1977 income tax return.

    (ae)  A part of the underpayment of tax required to be shown on the petitioners [sic] income tax returns for their 1975, 1976 and 1977 taxable years is due to fraud.

[2] The following subparagraphs of paragraph seven are supported by the record and the findings of fact in our prior opinion:

    (a)  Petitioners Leon Spear and Jeanette Spear were married individuals during the years 1975, 1976 and 1977.

(continued...)

---

[2](...continued)

    (b) During the years 1975, 1976 and 1977, petitioners owned and controlled two corporations known as Ezy Parks, Inc. and Tumble Down, Inc.

    (c) Ezy Parks, Inc. was incorporated in Pennsylvania on December 26, 1956 and at all times was wholly owned and controlled by petitioners.

    (d) Tumble Down, Inc. was incorporated in Pennsylvania on December 18, 1958 and was at all times wholly owned and controlled by petitioners.

    (e) During the years 1975, 1976 and 1977, Ezy Parks, Inc. and Tumble Down, Inc. each leased numerous parking lots which they in turn operated and managed [in] a business whereby cash fees were received from customers who parked their cars on the parking lots operated by Ezy Parks, Inc. and Tumble Down, Inc.

    (f) Ezy Parks II, Inc. was incorporated on November 13, 1975 in Pennsylvania and was at all times wholly owned and controlled by petitioners.

    (g) Ezy Parks II, Inc. was also engaged in the operation and management of parking lots and received cash fees from customers who parked their cars on these lots.

    (h) Petitioner Leon Spear supervised and managed the operations of Ezy Parks, Inc., Tumble Down, Inc. and Ezy Parks II, Inc. during the taxable years 1975, 1976 and 1977.

    (i) The parking lots operated and managed by petitioners through their wholly owned corporations were businesses in which receipts from customers were predominantly in cash.

    (j) Petitioner Jeannette Spear maintained the business records and handled the banking transactions for Ezy Parks, Inc, Tumble Down, Inc. and Ezy Parks II, Inc. during the taxable years 1975, 1976 and 1977.

*  *  *  *  *  *  *

(continued...)

and thus, the Court of Appeals' instruction concerning the treatment of the deemed facts does not affect our analysis to that extent.

In our prior opinion, several badges of fraud were present. Estate of Spear v. Commissioner, T.C. Memo. 1993-213 (slip. op. at 58-61). We now conclude that the badges of fraud without the deemed facts enumerated in supra note 2, do not clearly and convincingly establish petitioners' fraudulent intent.

---

[2](...continued)

(m)  The three corporations, Ezy Parks, Inc., Tumble Down, Inc. and Ezy Parks II, Inc. which were owned and operated by petitioners generated substantial cash receipts for each of the years 1975, 1976 and 1977.

(n)  The respondent has determined the petitioners [sic] correct taxable income for the taxable years 1975, 1976 and 1977 on the basis of petitioners [sic] net worth increases and non-deductible expenditures during each of the years 1975, 1976 and 1977.

\*   \*   \*   \*   \*   \*   \*

(q)  On April 7, 1976, petitioners incorporated an entity known as Jay Faunce, Inc.

\*   \*   \*   \*   \*   \*   \*

(x)  Petitioners made investments and expenditures far in excess of the amounts of income they reported on their tax returns for the taxable years 1975, 1976 and 1977.

(z)  Petitioners reported on their respective income tax returns adjusted gross income of only $35,902.00 for 1975, $45,893.00 for 1976, and $206,568.44 for 1977.

1.   <u>Implausible or Inconsistent Explanations of Behavior</u>

In finding that petitioner's explanations were implausible or inconsistent, we stated that petitioner's testimony about the cash hoard was not believable.  <u>Estate of Spear v. Commissioner</u>, T.C. Memo. 1993-213 (slip op. at 59).   The Court of Appeals found her testimony to be quite straightforward and to appear to be credible, <u>Estate of Spear v. Commissioner</u>, 41 F.3d at 11, and we have modified our earlier findings to what we believe is an appropriate extent based on her testimony, especially relating to petitioners' dealing in cash before 1974. We conclude that this badge of fraud is no longer present.

2.   <u>Large Understatements of Income</u>

The discrepancies between petitioners' actual net income and the income they reported is reduced to the extent of their cash on hand on December 31, 1974.  This badge of fraud is less compelling than before.

3.  Inadequate Records

4.  Failure to Supply Complete Information to Return Preparer

These two badges are not affected by removal of the deemed facts from our consideration.

5.  Diversion of Corporate Funds

6.  Dealings In Cash

Petitioner testified that her husband dealt extensively in cash as a matter of course in conducting their parking lot business.  These two badges of fraud are less compelling without the deemed facts.

We conclude that without the deemed facts that are not otherwise supported by the record, and based on our reevaluation of petitioner's testimony and the entire record, fraud has not been proven by clear and convincing evidence.  We hold that petitioners are not liable for the addition to tax for fraud under section 6653(b) for 1975, 1976, and 1977.

E.  Statute of Limitations

1.  Background

Petitioners timely filed joint Federal income tax returns for 1975, 1976, and 1977.  Petitioners reported gross income of $48,893 for 1976 and $70,708 for 1977.  Twenty-five percent of those amounts are $12,223 for 1976 and $17,677 for 1977.

More than 3 but less than 6 years after petitioners' returns for 1976 and 1977 were due to be filed, petitioners signed Forms

872 (Consent To Extend Time To Assess Tax) for 1976 and 1977 which extended the time to assess tax to December 31, 1986. Petitioners did not consent to extend the time to assess tax for 1975.  Respondent mailed a notice of deficiency for 1975, 1976, and 1977 on December 23, 1986.  That date was more than 6 years after petitioners filed their 1975 return.

Generally, the Commissioner must assess tax within 3 years after the due date of a timely filed return.  Sec. 6501(a). Respondent bears the burden of proving that an exception to the 3-year limit on the time to assess tax applies if, as here, the notice of deficiency was mailed more than 3 years after the filing date.  Farmers Feed Co. v. Commissioner, 10 B.T.A. 1069 (1928).

2.   Statute of Limitations for 1975

Respondent contends that no limit on the time to assess tax applies for 1975 because respondent proved fraud.  Sec. 6501(c)(1).  Respondent does not argue that any exception other than fraud under section 6501(c)(1) applies to 1975.  We have concluded that respondent did not prove fraud for 1975, 1976, or 1977.  See par. D, above.  Thus, assessment of the deficiency and addition to tax for 1975 is barred by the statute of limitations.

a.   Statute of Limitations for 1976 and 1977

Respondent contends that assessment and collection for 1976 and 1977 are timely because petitioners omitted a substantial

amount of income.  Sec. 6501(e)(1)(A).  Section 6501(e)(1)(A)

provides in part:

> If the taxpayer omits from gross income an amount
> properly includible therein which is in excess of 25
> percent of the amount of gross income stated in the
> return, the tax may be assessed, or a proceeding in
> court for the collection of such tax may be begun
> without assessment, at any time within 6 years after
> the return was filed.  * * *

Respondent bears the burden of proving that the 6-year limit

on the time to assess tax applies.  Reis v. Commissioner, 1 T.C.

9, 13-14 (1942), affd. 142 F.2d 900 (6th Cir. 1944).

### b.    Six-Year Requirement

Less than 6 years after the due date for petitioner's 1976

and 1977 returns, petitioners signed Forms 872 to extend the time

to assess tax to December 31, 1986.  Respondent issued the notice

of deficiency on December 23, 1986.  Petitioners concede that

respondent issued the notice of deficiency in time to qualify

under section 6501(e)(1)(A) if more than 25 percent of gross

income was omitted from each return.

### c.    Twenty-Five Percent Omission From Gross Income

Respondent must prove that petitioners omitted more than 25

percent of gross income from their 1976 and 1977 returns.  Sec.

6501(e)(1)(A); Romine v. Commissioner, 25 T.C. 859, 871 (1956).

Petitioners contend that respondent does not meet the 25

percent requirement.  Petitioners contend that respondent may not

rely on the general presumption of correctness of a deficiency

notice to meet this burden, and that the mere existence of bank

deposits does not establish that the deposits were taxable. Reis v. Commissioner, supra; Kavoosi v. Commissioner, T.C. Memo. 1986-190; Easton v. Commissioner, a Memorandum Opinion of this Court dated February 5, 1943; see also Hurley v. Commissioner, 22 T.C. 1256, 1264-1265 (1954), affd. 233 F.2d 177 (6th Cir. 1956).

We said above at par. A that respondent may use the net worth method in this case. If we find that the net worth method shows that petitioners omitted more than 25 percent from gross income, then respondent has met the burden of proving that section 6501(e)(1)(A) applies. See, e.g., Courtney v. Commissioner, 28 T.C. 658, 668-669 (1957); Harris v. Commissioner, T.C. Memo. 1977-222; Micciche v. Commissioner, T.C. Memo. 1966-138; Bynum v. Commissioner, T.C. Memo. 1958-19; Smith v. Commissioner, T.C. Memo. 1957-171; Boatsman v. Commissioner, T.C. Memo. 1957-93; Estate of Williams v. Commissioner, T.C. Memo. 1955-321. Respondent did so here. Petitioners reported gross income of $48,893 for 1976 and $70,708 for 1977. Twenty five percent of those amounts is $12,223 for 1976 and $17,677 for 1977. Petitioners failed to report more than these amounts for 1976 and 1977.

Petitioners argue that respondent may not establish that they omitted 25 percent of their gross income by the net worth method because it is arbitrary. Petitioners contend that respondent omitted cash on hand and loans receivable, and did not show that petitioners had a likely taxable source of income or

negate all nontaxable sources of income.  We decided this issue in our prior opinion without using the deemed facts.  We now find that petitioners had $200,000 cash on hand on December 31, 1974. We adjust the net worth analysis to account for that fact. Hoffman v. Commissioner, 298 F.2d 784, 786 (3d Cir. 1962), affg. in part on this issue T.C. Memo. 1960-160; Baumgardner v. Commissioner, 251 F.2d 311 (9th Cir. 1957); Bodoglau v. Commissioner, 230 F.2d 336 (7th Cir. 1956); Potson v. Commissioner, 22 T.C. 912, 928-929 (1954).  Thus, respondent is barred from assessing tax for 1975, but is not barred from assessing tax for 1976 and 1977.

To reflect the foregoing,

Decision will be entered

under Rule 155.