Erma M. Schrader v. Commissioner.
Schrader v. Commissioner
Docket No. 1990-67.
United States Tax Court
T.C. Memo 1968-224; 1968 Tax Ct. Memo LEXIS 79; 27 T.C.M. (CCH) 1095; T.C.M. (RIA) 68224; September 30, 1968. Filed Erma M. Schrader, pro se, 4168 Taylor Blvd., Louisville, Ky. Dennis M. Feeley, for the respondent. 1096 TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's income taxes: [1]
Year
Income taxdeficiency
Addition to tax (Sec.6653(b)) [2]
1960
$ 5,316.19
$ 2,658.10
1961
1,198.23
599.12
1962
2,649.22
1,324.61
1963
1,774.98
887.49
1964
3,090.03
1,545.02
1965 5,698.71
2,849.36
$19,727.36
$9,863.70
Respondent *80 has conceded the additions to tax under section 6653(b) and, as a result, the deficiencies for the taxable years 1960, 1961, and 1962. The remaining deficiencies for the taxable years 1963, 1964, and 1965 total $10,563.72. The respondent has determined taxable income of the petitioner by the net worth method. Petitioner has not disputed the use of that method but has raised questions which involve the amounts to be assigned to merchandise inventory, real estate, rental furnishings, and depreciation reserves at the end of the taxable years 1963, 1964, and 1965 and to business furniture, fixtures, and equipment at the end of the taxable years 1964 and 1965. Findings of Fact The petitioner resided in Louisville, Kentucky, at the time of the filing of the petition herein and filed joint income tax returns with her husband [3] for the years 1963, 1964, and 1965 with the district director of internal revenue for the district of Kentucky. During the taxable years 1963, 1964, and 1965, petitioner and her husband engaged in several businesses, including a coin-operated car wash, a coin-operated laundry, a service station, a beauty salon, and a beauty *81 supply business. They also owned apartment properties which were rented. Petitioner lived at 4168 Taylor Boulevard, where the beauty supply business was located and which included two rental apartments. One-half of the depreciation was charged to the beauty supply business and onequarter to the apartments. No depreciation was taken on the residence portion. The property was originally acquired in 1947 and depreciation was based on a 40-year life from that time until 1962. The 40-year period was approved by a revenue agent in 1954. A substantial addition was made in 1963 to accommodate the beauty supply business, at which time petitioner began to take depreciation based on a 25-year life. The amount of depreciation taken on the returns was the same in 1963 and 1965. No depreciation was taken in 1964. A car wash was erected at 4161 Taylor Boulevard in two phases, the first in 1964, the second in 1965. No depreciation was claimed until 1965, at which time depreciation was taken on the basis of a 10-year useful life, allowing $1,000 for salvage. Petitioner received a home at 1404 Blue Grass Avenue as a gift from her parents in 1952 and converted this property to income-producing *82 purposes in 1962. A coin laundry and beauty salon business was carried on at 4160 Taylor Boulevard. The structure housing these facilities was acquired in 1954. Depreciation was taken on the basis of a 20-year useful life, which was approved by a revenue agent at that time. Substantial additions were made to the structure in 1958, 1960, and 1965, and depreciation of these improvements was taken on the basis of a useful life equal to the remainder of the original 20-year period during the taxable years in question. Respondent computed the taxable income of petitioner and her husband based upon their net worth at the dates and in the amounts indicated as follows: 1097 1962
1963
1964
1965
ASSETS
Cash on hand
$ 500.00
$ 500.00
$ 500.00
$ 500.00
Cash in bank
2,661.81
2,008.74
1,691.51
818.57
Savings accounts
7,358.02
5,154.32
985.16
2,385.84
Loans receivable
Accounts receivable
624.36
2,270.49
3,379.42
Stocks and bonds
Merchandise inventory
21,252.85
34,165.00
35,633.05
33,930.32
Business furniture, fixtures, and equipment
33,756.58
33,736.58
39,424.98
46,516.71
Household furnishings
3,200.00
3,200.00
3,200.00
3,775.00
Automobile
2,865.00
2,865.00
3,451.70
3,451.70
Real estate
201,855.85
201,855.85
222,290.34
230,202.19
Rental furnishings 900.00
2,600.00
5,500.00
8,550.00
Total assets
274,330.11
286,709.85
314,947.23
333,509.75
LIABILITIES
Mortgages and notes payable
95,309.39
95,434.23
103,734.36
90,211.77
Reserve for depreciation 41,892.60
49,970.76
58,742.08
69,734.13
Total liabilities
137,201.99
145,404.99
162,476.44
159,945.90
Net worth
137,128.12
141,304.86
152,470.79
173,563.85
Net worth at beginning of year 137,128.12
141,304.86
152,470.79
Increase in net worth
4,176.74
11,165.93
21,093.06
Adjustments to net worth 4,231.90
5,376.48
5,153.40
Adjusted gross income as corrected
8,408.64
16,542.41
26,246.46
Adjusted gross income per return
(2,658.00)
(11,144.79)
(2,104.31)
Understatement of adjusted gross income $ 11,066.64
$ 27,687.20
$ 28,350.77
*83 1098 Opinion This case presents a most frustrating situation. Petitioner appeared pro se. It was made clear to her at the outset that the issues involved, although essentially factual, were not easily susceptible of proof and that she thus would be well advised to enlist the assistance of counsel. The advice of the trial judge in this regard was not followed. At the ensuing trial, every effort was made, but with little success, to develop the necessary facts which might support petitioner's case. The net result is that we have been confronted with a vague, confused, and inadequate record entirely of petitioner's own making. Petitioner clearly has misconceived the responsibility which she was required to discharge. She seems to have assumed that the burden of proof was on the respondent and that mere general assertions as to the basis for the amounts reflected on the tax returns were sufficient to require a decision in her favor. Obviously, this position is not valid. Petitioner was specifically informed at the trial that, since no issue of fraud was involved, the entire burden of proof was upon her. The fact that petitioner chose to appear on her own behalf in no way lessens *84 that burden. Wallis v. Commissioner, 357 F. 2d 313 (C.A. 10, 1966), affirming a Memorandum Opinion of this Court. Parenthetically, we should add that, although the testimony of petitioner, who was the sole witness, at times was disjointed and created the image of an untutored taxpayer, we were left with the firm conviction that she possessed considerable knowledge about the tax laws and the keeping of books and records. We now turn to the substantive issues for decision. At the outset, we note that we were furnished no probative evidence that petitioner or her husband maintained adequate records. Under such circumstances, respondent's net worth statement is prima facie correct and the burden still remains on petitioner to disprove the deficiencies in income based thereon. Lusk v. Commissioner, 250 F. 2d 591 (C.A. 7, 1957), affirming a Memorandum Opinion of this Court. This is particularly true in a case such as this where petitioner has not disputed the use of the net worth method in computing taxable income and in fact has submitted a counter net worth statement. Cf. Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960), affirming a Memorandum *85 Opinion of this Court. Nor does petitioner's mere testimony that the returns were correct as filed rebut the presumptive correctness of respondent's determination. Louis Halle, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (C.A. 2, 1949). Since petitioner offered no probative evidence with respect to the taxable year 1962, we accept respondent's calculation of net worth as of December 31, 1962 as a starting point and proceed to examine the particular items in the respondent's net worth statement with which petitioner takes issue. 1. Inventory. The parties have presented the following amounts for closing inventory: 1963
1964
1965
Petitioner
$30,165.00
$20,633.05
$17,425.00
Respondent
34,165.00
35,633.05
33,930.32
Tax returns
29,725.00
20,275.00
17,475.00 Examination of the tax returns, the deficiency notice, and petitioner's testimony reveals that the sole inventory discrepancy involves the beauty supply business. Petitioner testified that she reduced the book value (i.e., cost) of the inventory on the books because city inventory tax was being paid in successive years on the same inventory. But the mere reduction for *86 local tax purposes (assuming that this was in fact the situation) has no bearing on the value of the inventory for Federal tax purposes. Petitioner has also asserted that the inventory was old and should not have been valued at cost. Age alone, however, is not determinative of value. In the absence of further evidence concerning value, we must sustain respondent's inventory determinations. 2. Business furniture, fixtures, and equipment. This item is not in dispute for the taxable year 1963. The following figures submitted by the parties are disputed: 1964
1965
Petitioner
$26,633.05
$62,890.92
Respondent
39,424.98
46,516.71 Petitioner has failed to provide any testimony or documentary evidence to negate the presumptive correctness of respondent's figures or to support her own calculation and we therefore sustain respondent's determinations. We also note that petitioner's 1965 excess seems simply to have reflected a transfer of an equivalent amount from respondent's determination of the amount of real estate. As such, it would not affect net worth except insofar as an increased 1099 amount of depreciation might be involved. See p. 12, infra. 3. *87 Real estate. The following figures have been presented for real estate: 1963
1964
1965
Petitioner
$213,855.85
$217,812.72
$217,812.72
Respondent
201,855.85
222,290.34
230,202.19 The differences relate to the properties at 1404 Blue Grass Avenue and 4161 Taylor Boulevard. There is no disagreement as to the land value at 4161 Taylor Boulevard. A car wash was erected thereon in 1964 and an addition made thereto in 1965. No corresponding increment was reflected in the amounts set forth in petitioner's net worth statement. Respondent listed the amounts attributable to the car wash as $17,477.62 in 1964 and increased that figure to $25,389.47 in 1965. Petitioner contends that the improvements should have been added to business fixtures. This seems to conflict with her assertion that the amount attributable to business fixtures generally declined in 1964. In any event, no probative evidence has been furnished from which we can determine what adjustments, if any, petitioner may have made in the business furnishings account because of the addition of the car wash equipment. In view of the foregoing, we sustain respondent's determinations. With respect *88 to 1404 Blue Grass Avenue, the parties disagree as to the original amount to be assigned. They agree, however, that there was no change in the respective amounts used by them during the three years involved herein, with the exception that in 1964 petitioner claimed an increase of $3,956.87 and respondent claims an increase of $2,956.87. Since petitioner's increase is greater, its adoption would only serve to increase her income for that year except with respect to a possible increase in depreciation (see para. 4, infra). Petitioner has offered no probative evidence to support her claimed increase for 1964. Consequently, in view of the fact that respondent has claimed no larger deficiency than that set forth in the deficiency notice, his determination is sustained. 4. Rental furnishings. Petitioner claims rental furnishings should be figured at $6,500, $7,500, and $8,500 for the taxable years 1963, 1964, and 1965. Respondent has assigned amounts of $2,600, $5,500, and $8,550. If petitioner's figures were adopted, there would be a shifting of income from 1964 and 1965 to 1963 and also a probable increase in the allowable depreciation. However, petitioner has offered no probative evidence *89 to support the amounts asserted by her. We therefore sustain respondent's determinations. 5. Depreciation reserue. The following amounts are involved herein: 1963
1964
1965
Depreciation taken on tax return
$12,956.36
$ 5,562.70
$14,881.70
Increase in reserve per petitioner
12,402.23
11,433.14
16,523.37
Increase in reserve per respondent
8,078.16
8,771.32
10,992.05
To a large degree, petitioner's claim for an increase in the depreciation reserve, beyond that allowed by respondent, stems from her assertions that improper useful lives were used for various items and that some of the amounts assigned to the real estate should have been assigned to equipment. We have already indicated that, aside from petitioner's vague, general, and uncorroborated testimony, there is no support in the record for those assertions. Petitioner also relies on a claim that, with respect to certain property, notably 4168 Taylor Boulevard, the basis for depreciation had previously been approved by a revenue agent. Aside from the fact that respondent is not bound by the action of a revenue agent with respect to prior years (see Wright Contracting Co., 36 T.C. 620, 636-637 (1961), *90 affd. on other grounds 316 F. 2d 249 (C.A. 5, 1963)), the testimony indicates that the petitioner and her husband did not consistently follow the allegedly approved procedure. Thus, with respect to 4168 Taylor Boulevard, although the agent approved a 40-year useful life in 1954, the tax returns show a switch to a 25-year useful life for the entire property when substantial improvements were made in 1963. And in 1964, petitioner made no claim on her return for any depreciation whatsoever on this property. Another example of inconsistency is reflected in the treatment on the tax returns of depreciation on 4160 Taylor Boulevard. Here, a 20-year useful life appears to have been adopted and approved by the revenue agent in 1954. Petitioner made substantial improvements on the property in 1958 and adopted a new 20-year period for depreciation. By 1963, petitioner was depreciating the original property and improvements on the 20-year period begun in 1954, but she apparently 1100 omitted depreciation in years when the property was undergoing renovation. As to the car wash, located at 4161 Taylor Boulevard, depreciation was claimed in the tax returns only for 1965 on the *91 basis of a 10-year useful life for the entire property, buildings as well as equipment. Respondent allowed 10 years only for the portion of the cost allocated to equipment and 25 years on the buildings. Petitioner testified aht others were allowed to depreciate car wash structures on a 10-year basis. Aside from the fact that her testimony is wholly uncorroborated, the treatment of others has no legal relevance to the period for computing depreciation allowable to petitioner. It was incumbent upon petitioner to prove the proper period as to the property involved herein. We are not unmindful of the fact that respondent quite properly hesitates to disturb prior practices of a taxpayer in the complex area of depreciation. (B)-0 Sec. 1.167 (b)-0(a) Income Tax Regs.; Rev. Rul. 90, 1953-1 C.B. 43. Indeed, we think that such hesitancy has particular relevance where respondent uses the net worth method to compute taxable income. But petitioner has given us wholly insufficient evidence of a clear and consistent practice to justify accepting her figures as against those adopted by respondent. Indeed, what evidence we have indicates that petitioner and *92 her husband followed no such practice. In order to reflect respondent's concessions as to the taxable years 1960, 1961, and 1962 and as to the additions to tax for the taxable years before us, Decision will be entered under Rule 50. Footnotes
1. The deficiency notice was addressed to petitioner and her husband, but only petitioner filed a petition herein. ↩
2. All references, unless otherwise specified, are to the Internal Revenue Code of 1954.↩
3. See footnote 1, supra.↩