T.C. Memo. 1996-459


UNITED STATES TAX COURT


JUNG K. YOON AND HEE S. YOON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9034-94.                    Filed October 10, 1996.


<u>John E. Leeper</u> and <u>Towner S. Leeper</u>, for petitioners.

<u>Frank R. Hise</u> and <u>Gerald L. Brantley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Chief Judge</u>:  Respondent determined deficiencies, an addition to tax, and penalties in petitioners' Federal income taxes as follows:

|  |  | Addition to Tax and Penalty | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6663(a) |
| 1989 | $47,002 | -- | $35,251.50 |
| 1990 | 76,128 | -- | 56,528.00 |
| 1991 | 83,068 | $9,071 | 61,157.00 |

Respondent's answer asserted the section 6662(a) accuracy-related penalty in the alternative to the section 6663(a) fraud penalty.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by respondent, the issues remaining for decision are: (1) Whether petitioners received unreported income during the years in issue, including income from their wholly owned S corporation during 1991; (2) whether petitioners are liable for the section 6651(a)(1) addition to tax for 1991; and (3) whether petitioners are liable for the section 6662(a) accuracy-related penalty for the years in issue.

Preliminary Matter

Due to petitioners' failure to comply with this Court's standing pretrial order and hearsay objections by the parties set forth in the stipulations, many of the exhibits offered into evidence were not received at the trial of this case. During the trial, petitioners' counsel offered to withdraw all objections to respondent's exhibits if respondent would in turn withdraw all objections to petitioners' exhibits. Thereafter, the Court received a document from respondent in which respondent's objections were withdrawn. We have therefore proceeded with the disposition of this case considering all of the exhibits attached

to the stipulation of facts and supplemental stipulation of facts and an additional exhibit produced at trial.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  At the time the petition was filed, Jung K. Yoon and Hee S. Yoon (petitioners) resided in El Paso, Texas.

Jung K. Yoon (Yoon) was born in Seoul, Korea.  Yoon immigrated to the United States in 1975.

During 1989, 1990, and 1991, petitioners owned and operated a general merchandise store specializing in low-cost items in South El Paso under the name L.A. Trading.  Most of petitioners' customers came into the United States from Juarez, Mexico. During the years in issue, Yoon worked 14 hours a day, 7 days a week, and he never took a vacation.

In 1989, L.A. Trading was operated as a sole proprietorship. On January 31, 1990, petitioners incorporated Jung K. Yoon, Inc. (JKY), electing treatment as an S corporation.  JKY operated the merchandise business that was previously operated as a sole proprietorship.  During 1990 and 1991, petitioners owned 100 percent of the stock of JKY.  By the end of 1995, petitioners closed the store as a result of the downturn in the Mexican economy and the devalued peso.

JKY's suppliers, mainly Korean-owned businesses, were primarily located in Los Angeles, California.  Yoon entertained

JKY's suppliers on occasion in hopes of getting better prices and better payment plans.  JKY purchased over $1 million in inventory in each of the years in issue.  Yoon frequently traveled to Los Angeles to purchase merchandise.  Yoon also traveled to Las Vegas, Nevada, two or three times each year to attend trade shows and to purchase merchandise.  Yoon has no relatives in Los Angeles or Las Vegas.

Petitioners maintained several personal and business accounts in at least two banks during the years in issue.  Petitioners' children also maintained bank accounts during the years in issue.

During the years in issue, petitioners acquired the following properties:

| Date | Address | Purchase Price |
|------|---------|----------------|
| 03/16/89 | 515 South Stanton | $447,000 |
| 04/18/89 | 519 South Stanton | $450,000 |
| 05/02/89 | 413 8th Street | $300,000 |
| 04/30/91 | 932 Cherry Hill | $320,000 |

Petitioners incurred the following indebtedness for the purchase of real property during the years in issue:

| Date | Amount | Lender | Reason |
|------|--------|--------|--------|
| 1989 | $ 80,000 | Jae Gilpin | Purchase of 519 South Stanton |
| 1989 | $350,000 | Teresa Baca | Purchase of 515 South Stanton |
| 1989 | $300,000 | Julia Samaniego | Purchase of 519 South Stanton |
| 1989 | $270,000 | Roberto Okubo | Purchase of 413 E. 8th |
| 1989 | $ 60,000 | Su Chon Han | [1] |
| 1990 | $ 30,000 | Doo Sung | Purchase of 932 Cherry Hill |
| 1991 | $  3,000 | Doo Sung | Purchase of 932 Cherry Hill |

[1]The record is not clear as to the purpose of this loan.

Petitioners paid interest on the loan from Jae Gilpin (Gilpin).
Petitioners were required to pay interest on at least a portion
of the loan from Su Chon Han.

Petitioners also incurred debt related to their purchase of
several automobiles during the years in issue.

Petitioners had the following personal credit card account
balances:

| Date | Credit Card Balance |
|------|------|
| Dec. 31, 1989 | $20,521.99 |
| Dec. 31, 1990 | 16,413.37 |
| Dec. 31, 1991 | 26,075.24 |

JKY had the following nontaxable receipts during 1991:

| Description | Amount |
|------|------|
| Loan from Sunwest | [1]$40,000 |
| Loan from shareholder | [1]89,530 |
| Loans from suppliers: | |
|    Price Mart | 5,000 |
|    Almar Sales | 14,000 |
|    La Coqurto | 3,000 |
| Total | $151,530 |

[1]Respondent allowed these amounts in the notice of
deficiency.

JKY had $140,614.37 of sales returns/chargebacks during 1991.

## Income Tax Returns

Patrick Caufield (Caufield) prepared petitioners' 1989
Form 1040, U.S. Individual Income Tax Return, and JKY's 1990
Form 1120S, U.S. Income Tax Return for an S Corporation. Caufield
did not review the tax returns with Yoon because of the
difficulty in communicating with him.  Thomas Hwang prepared
petitioners' 1990 and 1991 Forms 1040 and JKY's 1991 Form 1120S.

The return preparers did not use the cash register tapes from the business when calculating the amount of gross receipts to be reported on petitioners' or JKY's Federal income tax returns. Petitioners prepared monthly written statements of how much gross receipts were received by the business. These statements, along with other information supplied by petitioners, were used in the preparation of petitioners' and JKY's returns.

Petitioners filed joint Federal income tax returns on a cash basis for each of the years in issue. Petitioners' 1991 return was filed on February 22, 1993.

JKY filed Forms 1120S for its taxable years ended December 31, 1990, and December 31, 1991, respectively.

Respondent's Examination and Determination

During an examination of petitioners' returns, the examining revenue agent requested that petitioners produce bank records and various other documents. Petitioners did not produce check registers or all of the bank statements and canceled checks from petitioners' various accounts or other records adequate to determine petitioners' taxable income. The agent therefore reconstructed petitioners' income as described below.

Respondent's Net Worth Calculations

Respondent computed petitioners' beginning net worth by calculating bank balances, inventory, personal property, real property, and other assets owned at the end of 1988 and reducing this amount by loans and accumulated depreciation. Any apparent

mathematical errors are the result of respondent's rounding off various amounts.

The following is respondent's computation of petitioners' increase in net worth plus personal living expenses for 1989:

|  | 12/31/88 | 12/31/89 |
|---|---|---|
| Assets |  |  |
| Bank account balances |  |  |
| Cash on hand | $ 0.00 | $ 0.00 |
| Sunwest - 180-0090126 | 0.00 | 15,506.99 |
| Sun World - 27-02180 | 0.00 | 8,226.29 |
| Surety Savings - 55-46374 | 15,619.47 | 0.00 |
| Surety Savings - 59-40245 | 1,648.17 | 0.00 |
| Sun World - 27-02236 | 0.00 | 1,754.74 |
| Sun World - 62-00931 | 0.00 | 1,717.29 |
|  | $ 17,267.64 | $ 27,205.31 |
| Inventory | $270,000.00 | $ 272,797.00 |
| Personal property |  |  |
| Store equipment | $ 378.00 | $ 378.00 |
| Steel gate | 140.00 | 140.00 |
| Improvements | 888.00 | 888.00 |
| 1982 Chevrolet van | 11,629.00 | 11,629.00 |
| Display case | 600.00 | 600.00 |
| Fixtures | 5,406.00 | 5,406.00 |
| Cash register | 0.00 | 1,188.00 |
| 1989 Isuzu | 0.00 | 13,317.00 |
| 1988 Cadillac | 0.00 | 19,973.80 |
|  | $ 19,041.00 | $ 53,519.80 |
| Real property |  |  |
| 515 S. Stanton | $ 0.00 | $ 447,000.00 |
| 519 S. Stanton | 0.00 | 450,000.00 |
| 413 E. 8th Street | 0.00 | 300,000.00 |
|  | $ 0.00 | $1,197,000.00 |
| Other assets |  |  |
| Deposits | $ 530.00 | 530.00 |
| Passive loss carryover | 0.00 | 63,413.00 |
|  | $ 530.00 | $ 63,943.00 |
| Total assets | $306,838.64 | $1,614,465.11 |

Liabilities

Loans and mortgages

| | | |
|---|---|---|
| 515 S. Stanton - Baca | $ 0.00 | $ 346,685.42 |
| 519 S. Stanton - Samaniego | 0.00 | 194,072.70 |
| 413 E. 8th - Okubo | 0.00 | 261,723.45 |
| Note payable - Sunwest | 0.00 | 100,000.00 |
| Note payable - Autos | 0.00 | 10,012.62 |
| Mortgage payable - Gilpin | 0.00 | 80,000.00 |
| Note payable - Cadillac | 0.00 | 16,676.89 |
| Note payable - Han | 0.00 | 60,000.00 |
| | $ 0.00 | $1,069,171.08 |

Accumulated depreciation

| | | |
|---|---|---|
| 515 S. Stanton | $ 0.00 | $ 9,978.00 |
| 519 S. Stanton | 0.00 | 7,937.00 |
| 413 E. 8th | 0.00 | 5,159.00 |
| Store equipment | 190.00 | 266.00 |
| Steel gate | 70.00 | 99.00 |
| Improvements | 445.00 | 631.00 |
| 1982 Chevrolet van | 3,815.00 | 8,615.00 |
| Display case | 300.00 | 420.00 |
| Fixtures | 2,366.00 | 3,235.00 |
| Cash register | 0.00 | 1,188.00 |
| 1989 Isuzu | 0.00 | 2,660.00 |
| | $ 7,186.00 | $ 40,188.00 |

| | | |
|---|---|---|
| Total liabilities | $ 7,186.00 | $1,109,359.00 |
| Net worth | $299,653.00 | [1]$ 505,106.00 |
| Beginning net worth | | (299,653.00) |
| Change in net worth | | $ 205,453.00 |
| Personal living expenses | | 124,929.00 |
| Adjusted gross income as corrected | | $ 330,382.00 |
| Adjusted gross income per return | | (172,216.00) |
| Unidentified Income | | $ 158,166.00 |

[1]Respondent has conceded that this amount should be reduced by $800, the trade-in value of a 1980 Buick traded in on the purchase of the 1989 Isuzu.

The following is respondent's computation of petitioners' increase in net worth plus personal living expenses for 1990:

|  | 12/31/89 | 12/31/90 |
|---|---|---|
| **Assets** | | |
| Bank account balances | | |
| Cash on hand | $ 0.00 | $ 0.00 |
| Sunwest - 180-009126 | 15,506.99 | 4,432.00 |
| Sun World - 27-02180 | 8,226.29 | 11,922.00 |
| Sunwest Bank - 1800048108 | 0.00 | 5,930.00 |
| Sunwest Bank - 1850002567 | 0.00 | 1,028.00 |
| Sun World - 27-02236 | 1,754.74 | 0.00 |
| Sun World - 62-00931 | 1,717.29 | 3,674.00 |
| Sunwest Bank - 1800095316 | 0.00 | 14,177.00 |
| Sunwest Bank - 1800096908 | 0.00 | 1,355.00 |
| Cash transferred to JKY | 0.00 | (8,106.00) |
|  | $ 27,205.31 | $ 34,412.00 |
| Inventory | $ 272,797.00 | $ 0.00 |
| Personal property | | |
| Store equipment | $ 378.00 | $ 0.00 |
| Steel gate | 140.00 | 0.00 |
| Improvements | 888.00 | 0.00 |
| 1982 Chevrolet van | 11,629.00 | 0.00 |
| Display case | 600.00 | 0.00 |
| Fixtures | 5,406.00 | 0.00 |
| Cash register | 1,188.00 | 0.00 |
| 1989 Isuzu | 13,317.00 | 0.00 |
| 1988 Cadillac | 19,973.80 | 19,973.80 |
|  | $ 53,519.80 | $ 19,973.80 |
| Real property | | |
| 515 S. Stanton | $ 447,000.00 | $ 447,000.00 |
| 519 S. Stanton | 450,000.00 | 450,000.00 |
| 413 E. 8th Street | 300,000.00 | 300,000.00 |
|  | $1,197,000.00 | $1,197,000.00 |
| Capital account - JKY | $ 0.00 | $ 283,043.00 |
| Unused passive losses | $ 63,943.00 | $ 38,413.00 |
| Total assets | $1,614,465.00 | $1,572,842.00 |

Liabilities

Loans and mortgages

| | | |
|---|---:|---:|
| 515 S. Stanton - Baca | $ 346,685.42 | $ 342,209.68 |
| 519 S. Stanton - Samaniego | 194,072.70 | 182,811.21 |
| 413 E. 8th - Okubo | 261,723.45 | 219,407.65 |
| Note payable - Sunwest | 100,000.00 | 0.00 |
| Note payable - Ford Motor | 10,012.61 | 0.00 |
| Note payable - Cadillac | 16,676.89 | 10,840.33 |
| Note payable - Han | 60,000.00 | 60,000.00 |
| Note payable - Gilpin | 80,000.00 | 71,100.00 |
| | $1,069,171.07 | $ 886,368.87 |

Accumulated depreciation

| | | |
|---|---:|---:|
| 515 S. Stanton | $ 9,978.00 | $ 22,581.00 |
| 519 S. Stanton | 7,937.00 | 20,635.00 |
| 413 E. 8th | 5,159.00 | 13,413.00 |
| Store equipment | 266.00 | 0.00 |
| Steel gate | 99.00 | 0.00 |
| Improvements | 631.00 | 0.00 |
| 1982 Chevrolet van | 8,615.00 | 0.00 |
| Display case | 420.00 | 0.00 |
| Fixtures | 3,235.00 | 0.00 |
| Cash register | 1,188.00 | 0.00 |
| 1989 Isuzu | 2,660.00 | 0.00 |
| | $ 40,188.00 | $ 56,629.00 |

| | | |
|---|---:|---:|
| Total liabilities | $1,109,359.00 | $ 942,998.00 |
| Net worth | $ 505,106.00 | $ 629,844.00 |
| Beginning net worth | | (505,106.00) |
| Change in net worth | | $ 124,738.00 |
| Personal living expenses | | 138,810.00 |
| Cash withdrawal from JKY capital account | | (18,000.00) |
| Adjusted gross income as corrected | | $ 245,548.00 |
| Adjusted gross income per return | | (37,287.00) |
| Unidentified income | | $ 208,261.00 |

The following is respondent's computation of petitioners'
increase in net worth plus personal living expenses for 1991:

|  | 12/31/90 | 12/31/91 |
|---|---|---|
| **Assets** | | |
| | | |
| Bank account balances | | |
| | | |
| Cash on hand | $ 0.00 | $ 0.00 |
| Sun World - 27-02180 | 11,922.00 | 348.00 |
| Sunwest Bank - 1800048108 | 5,930.00 | 5,300.00 |
| Sunwest Bank - 1850002567 | 1,028.00 | 455.00 |
| Sunwest Bank - 1800095316 | 14,177.00 | 4,671.00 |
| Sunwest Bank - 1800096908 | 1,355.00 | 1,466.00 |
| | | |
| | $ 34,412.00 | $ 12,240.00 |
| | | |
| Personal property | | |
| | | |
| 1988 Cadillac | $ 19,973.80 | 19,973.80 |
| | | |
| Real property | | |
| | | |
| 932 Cherry Hill | $ 0.00 | $ 320,000.00 |
| 515 S. Stanton | 447,000.00 | 447,000.00 |
| 519 S. Stanton | 450,000.00 | 450,000.00 |
| 413 E. 8th Street | 300,000.00 | 300,000.00 |
| | $1,197,000.00 | $1,517,000.00 |
| | | |
| Capital account - JKY | $ 265,043.00 | $ 519,576.00 |
| | | |
| Unused passive losses | $ 38,413.00 | $ 12,624.00 |
| | | |
| Total assets | $1,554,842.00 | $2,081,414.00 |

Liabilities

Loans and mortgages

| | | |
|---|---|---|
| 515 S. Stanton - Baca | $ 342,209.68 | $ 336,734.60 |
| 519 S. Stanton - Samaniego | 182,811.21 | 169,995.27 |
| 413 E. 8th - Okubo | 219,407.65 | 0.00 |
| Note payable - Sunwest | 0.00 | 172,583.37 |
| Note payable - Chase | 10,840.33 | 4,270.06 |
| Note payable - Han | 60,000.00 | 60,000.00 |
| Note payable - Prudential | 0.00 | 254,378.24 |
| Note payable - Yi | 0.00 | (15,000.00) |
| Note payable - Gilpin | 71,100.00 | 0.00 |
| | $ 886,368.87 | $ 982,961.54 |

Accumulated depreciation

| | | |
|---|---|---|
| 515 S. Stanton | $ 22,581.00 | $ 35,184.00 |
| 519 S. Stanton | 20,635.00 | 33,333.00 |
| 413 E. 8th | 13,413.00 | 21,667.00 |
| | $ 56,629.00 | $ 90,184.00 |

| | | |
|---|---|---|
| Total liabilities | $ 942,998.00 | $1,073,146.00 |
| Net worth | $ 611,844.00 | $1,008,268.00 |
| Beginning net worth | | (611,844.00) |
| Change in net worth | | $ 396,424.00 |
| Personal living expenses | | 186,248.00 |
| Cash withdrawal from JKY capital account | | (133,100.00) |
| Adjusted gross income as corrected | | $ 449,572.00 |
| Adjusted gross income per return | | (244,010.00) |
| Unidentified income | | $205,562.00 |

Respondent prepared the computations of beginning and ending bank account balances from monthly bank statements and deposit slips.

Respondent computed petitioners' increase in ownership of personal property by calculating the personal property owned at the end of the year less personal property owned at the beginning

of the year. Third-party records, petitioners' depreciation schedules, and Department of Motor Vehicles' records were used to calculate petitioners' ownership of personal property.

Respondent computed petitioners' increase in the ownership of real property by determining the real property owned at the end of the year less what was owned at the beginning of the year. Respondent obtained the records relating to petitioners' acquisition of real property from third-party sources. Respondent used amortization tables to calculate loan balances at the end of each taxable year.

All payments from petitioners' personal bank accounts on credit card account balances were treated as personal living expenses in respondent's computation of petitioners' net worth.

Respondent determined petitioners' February 1, 1990, investment in JKY by netting assets and liabilities transferred to JKY as follows:

Assets

| | |
|---|---|
| Cash-Sunwest | $ 4,432.00 |
| Cash-Sun World | 3,674.00 |
| Deposits | 530.00 |
| Depreciable assets (business) | |
|     Store equipment | 378.00 |
|     Steel gate | 140.00 |
|     Improvements | 888.00 |
|     Chevrolet van | 11,629.00 |
|     Display cases | 600.00 |
|     Fixtures | 5,406.00 |
|     Cash register | 1,188.00 |
|     1989 Isuzu | 13,317.00 |
| Inventory | 267,077.55 |
| | $309,259.55 |

Liabilities

| | |
|---|---|
| Note payable-Chevrolet van | $ 10,012.61 |
| Note payable-Sunwest Bank | 91,666.67 |
| Accumulated depreciation | 17,114.00 |
| | 118,793.28 |
| | |
| Investment in JKY | $190,466.27 |

Respondent computed petitioners' December 31, 1990, investment in JKY by adding the February 1, 1990, investment to shareholder loans made during the year and income reported by JKY, less distributions made during the year.

| | |
|---|---|
| Investment as of 2/1/90 | $190,466.27 |
| Increased by: | |
|     1990 Income | 47,577.00 |
|     Loans to JKY | 45,000.00 |
| Decreased by: | |
|     1990 Distributions | (18,000.00) |
| Investment as of 12/31/90 | $265,043.27 |

Respondent computed petitioners' December 31, 1991, investment in JKY by adding the December 31, 1990, investment to

shareholder loans made during the year and income reported by JKY, less distributions made during the year.

| | |
|---|---|
| Investment as of 12/31/90 | $265,043.27 |
| Increased by: | |
| 1991 Income | 165,003.00 |
| Loans to JKY | 89,530.00 |
| Decreased by: | |
| 1991 Distributions | (134,105.00) |
| Investment as of 12/31/91 | $385,471.27 |

Income Pass-Through--Form 1120S Adjustment

Respondent based the proposed adjustments to JKY's 1990 and 1991 income on the bank deposit method. Respondent conceded the Form 1120S adjustment for taxable year 1990 in the amount of $38,321 based upon information supplied by petitioners during the preparation of this case for trial.

OPINION

Unreported Income

The first issue for resolution is whether petitioners underreported their taxable income for each of the years in issue. In this case, the evidence of unreported income consists of respondent's net worth and bank deposit analyses. The validity of those analyses must be examined by applying the standards set forth in Holland v. United States, 348 U.S. 121 (1954). Under those standards, respondent must establish, with reasonable certainty, an opening net worth; and she must establish that either a likely source of unreported income

existed or that she conducted a reasonable investigation of leads to negate the existence of nontaxable sources of income.  Id. at 132.

Under the net worth method, income is computed by determining a taxpayer's net worth at the beginning and end of a period.  The difference between the amounts is the increase in net worth.  An increase in a taxpayer's net worth, plus his nondeductible expenditures, less nontaxable receipts, may be considered taxable income.  Id. at 125.

Where the Commissioner has determined a deficiency by using the net worth method, we may adjust a determination of opening net worth shown by the trial record to be unrealistic.  Hoffman v. Commissioner, 298 F.2d 784, 786 (3d Cir. 1962), affg. in part T.C. Memo. 1960-160; Baumgardner v. Commissioner, 251 F.2d 311, 318 (9th Cir. 1957), affg. T.C. Memo. 1956-112; Potson v. Commissioner, 22 T.C. 912, 928-929 (1954), affd. sub nom. Bodoglau v. Commissioner, 230 F.2d 336 (7th Cir. 1956).  Any such adjustments do not invalidate the presumption of correctness attaching to other aspects of the Commissioner's deficiency determination if the determination was not arbitrary.  Hoffman v. Commissioner, supra at 788.

Petitioners have raised four areas of dispute with respondent's calculations, and we address each of these areas below.

1.  Outstanding Liabilities

Petitioners contend that respondent failed to reduce petitioners' net worth by outstanding liabilities, mainly credit card debts and debts to friends and relatives.

a.  Credit cards.  Respondent did not include in her net worth determination petitioners' personal credit card liabilities.

Petitioners failed to provide any reliable evidence from which we can establish or even estimate their credit card liabilities as of December 31, 1988, or January 1, 1989.  At trial, petitioners presented, as part of their personal living expense calculations, schedules prepared by Caufield that state alleged opening dates of certain credit card accounts.  No supporting documents were attached to these schedules, and Yoon did not testify regarding the establishment of any of the credit card accounts.  Without a reliable opening balance as of January 1, 1989, we cannot determine whether this debt increased or decreased during the year.  Thus, we cannot adjust respondent's net worth determination for 1989 by any credit card liabilities.

At trial, petitioners produced a schedule of credit card balances at the end of 1989, 1990, and 1991 with copies of certain monthly credit card statements attached.  These schedules and copies of statements are reliable evidence of petitioners'

credit card liabilities. However, the total reflected on petitioners' 1990 schedule should be reduced by the balance of a corporate credit card and by a balance for which there is no supporting monthly statement. The total reflected on petitioners' 1991 schedule should be reduced by the balances of two corporate credit cards and increased by $100 to correct an apparent mathematical error. Because, during 1989, petitioners operated L.A. Trading as a sole proprietorship, we need not reduce the total reflected on petitioners' 1989 schedule by the business (corporate) credit card. We have determined from the evidence that petitioners had the personal credit card balances set forth in our Findings of Fact. Respondent's calculations of petitioners' net worth for 1990 and 1991 must be adjusted to reflect the credit card balances as liabilities.

b. <u>Debts to friends and relatives</u>. Petitioners contend that respondent failed to take into account several liabilities that petitioners incurred to various friends and relatives.

Yoon testified at trial that he borrowed $30,000 in 1990 and $3,000 in 1991 from Doo Sung. Doo Sung also testified to the existence of these loans. Their testimony regarding the $30,000 loan in 1990 was corroborated by a copy of Doo Sung's checking account statement for a period ended October 25, 1990, that showed that a check in the amount of $30,000 had cleared the bank on October 22, 1990. Yoon's and Doo Sung's testimony regarding

the $30,000 loan and the $3,000 loan is neither incredible nor controverted.  Petitioners' net worth for 1990 and 1991 must be adjusted to reflect these increased liabilities.

Petitioner also testified that he borrowed $40,000, in addition to the $80,000 allowed by respondent, from Gilpin.  He testified that he did not sign a promissory note for either the $80,000 loan or the $40,000 loan from Gilpin.  Gilpin was not called to testify at trial.  The evidence presented regarding the $40,000 loan is sparse, ambiguous, and consists only of: canceled checks reflecting $109,320 in 1991 in payments to Gilpin; a letter stating that the checks represent the repayment of the $80,000 loan with interest; and a copy of a receipt from a title company indicating a $40,000 deposit from Gilpin to an account for the purchase of 515 Stanton Street.

Petitioners present two alternative arguments regarding the alleged $40,000 loan from Gilpin.  First, petitioners argue that their liabilities should be increased by $40,000 as of December 31, 1989, and reduced as of December 31, 1990, by documented payments.  In the alternative, if the $40,000 is not recognized as a liability, petitioners ask that the excess over $80,000 that petitioners paid to Gilpin be treated as an interest deduction in 1991.  In any event, petitioners argue that the excess payments were not personal living expenses as determined by respondent.

We are not persuaded that an additional $40,000 debt to Gilpin existed. We conclude, however, that petitioners did have an interest obligation to Gilpin on the $80,000 debt and paid interest in 1991. Petitioners are entitled to an interest deduction of $29,320 in 1991 relating to property they owned at 519 Stanton Street. No other payments have been established to be interest during that year.

Petitioners argue that at least six additional loans in amounts ranging from $5,000 to $15,000 existed during the years in issue. The only evidence of these loans is petitioners' testimony at trial as to the amount and approximate date of each alleged loan. Petitioner does not claim that any promissory notes were issued, that any interest was charged, or that any portion of any of the alleged loans has been repaid. Yoon and Doo Sung testified that Korean custom dictates that no promissory notes are executed to represent indebtedness because a friend's word is enough of a promise to repay. Petitioners are required, however, to establish by a preponderance of the evidence that the loans existed. Yoon's uncorroborated testimony as to the existence of additional loans is insufficient. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).

2. Asset Balances

a. Bank account balances. Petitioners contend that respondent erred in failing to reduce yearend bank balances by

outstanding checks. Respondent argues that she has been consistent in her treatment of the outstanding checks over the years in issue and that, in any event, the treatment sought by petitioners would result in a "wash".

Generally, bank balances are reduced by outstanding checks. See Lanier v. Commissioner, T.C. Memo. 1966-14. However, we cannot be certain that all outstanding checks have been identified for each of the years in issue. At trial, both Caufield and the revenue agent testified that the check registers and all canceled checks and bank statements from petitioners' various accounts were not presented during the examination of petitioners' returns. Furthermore, petitioners have not presented evidence regarding any outstanding checks as of December 31, 1988. This information would be necessary for consistency in the net worth computations. Respondent's determination of petitioners' bank account balances will be sustained.

Petitioners also argue that respondent erred in including the bank accounts of petitioners' children in petitioners' net worth. At trial, the revenue agent testified that it appeared that deposits into the children's accounts included business receipts. Yoon testified at trial that neither of petitioners deposited business money into their children's bank accounts and that family gifts generally made up any deposits into the accounts. Yoon also testified, however, that his wife received a

salary from L.A. Trading and that he did not know what she did with those paychecks. Petitioners have not persuaded us that petitioners' own funds were not deposited into these accounts. Respondent's determination that petitioners' children's bank accounts are included in petitioners' net worth will be sustained.

b. 1980 Buick. Petitioners contend that respondent failed to include in their net worth a Buick they purchased in 1980. Yoon testified at trial that the Buick cost $10,000 when he purchased it in 1980. Petitioners traded the Buick when they purchased their 1989 Isuzu. Respondent has not argued that the Buick was not owned by petitioners in 1988 and has conceded that petitioners' 1989 net worth should be reduced by $800, the trade-in value of the Buick.

In making use of the net worth method, actual cost, not fair market value, is to be used. See Kelley v. Commissioner, T.C. Memo. 1964-267. We conclude that petitioners' net worth on December 31, 1988, should be increased by $10,000 and that petitioners' net worth on December 31, 1989, should be decreased by $10,000 to reflect the ownership and subsequent sale of the Buick.

c. JKY capital account. Petitioners argue that respondent erred in three ways in the calculation of petitioners' JKY capital account.

First, petitioners argue that respondent did not subtract outstanding checks from the balances of the bank accounts transferred to JKY. We incorporate herein the above discussion of that argument.

Second, petitioners argue that the actual transfer to JKY consisted of $22,481.66 of business assets and $8,601.08 of depreciation, not $33,546 of business assets and $17,114 of depreciation as respondent determined. Petitioners offered an undated document prepared by Caufield entitled "S Corporation 351 Transfer" as evidence that respondent's calculation of assets and depreciation was incorrect. No supporting documents were presented. Caufield testified at trial that this document represented his initial computation of petitioners' section 351 transfer. He noted that at least one of the liabilities represented on the document was in fact paid by the date of the transfer and thus its inclusion was an error. Caufield also testified that his calculation of the category "Fixed Assets", unlike respondent's, did not include a 1982 Chevrolet van that was sold by petitioners prior to the section 351 transfer. Yoon did not testify about the transfer of assets to JKY. Other than Caufield's testimony that the 1982 Chevrolet van was not included in his calculation of fixed assets, we are provided with nothing other than a summary with preliminary numbers and no support or explanation. Petitioners have not presented sufficient evidence

that respondent's computation of the assets and depreciation transferred to JKY was in error.

Finally, petitioners argue that JKY assumed certain payroll taxes that should reduce petitioners' capital account balance for each of the years in issue. Caufield testified that JKY assumed various payroll tax liabilities as part of the section 351 transfer. These payroll taxes were included on Caufield's "S Corporation 351 Transfer". Respondent determined that JKY did not assume these liabilities. By Caufield's own admission at trial, the "S Corporation 351 Transfer" represented his initial computation. Petitioners have not provided any evidence, through Yoon's testimony or canceled checks, of JKY's assumption or payment of these payroll tax liabilities. Respondent's determination that JKY did not assume various payroll tax liabilities will be sustained.

### 3. Personal Living Expenses

Petitioners argue that their personal living expenses for 1989 were less than those calculated by respondent. Petitioners claim that certain expenditures, mainly life insurance payments and income tax payments, were incurred in 1990 and not in 1989. This, petitioners claim, would make a difference because respondent used a discounted 1990 figure to determine petitioners' 1989 personal living expenses. If only the recurring items of expense were included for both years before

the discount was applied, a lesser amount would be arrived at for 1989.

Petitioners have chosen to rely on a discounted 1990 figure less the above-mentioned expenses instead of producing their books and records so that a calculation of actual personal living expenses for 1989 could be made. Petitioners have offered no explanation for their failure to produce any books and records for 1989. Without proof of actual personal living expenses for 1989, we cannot conclude that respondent's determination of petitioners' personal living expenses for 1989 is incorrect or unreasonable.

Petitioners also object to respondent's use of a "plugged" figure of $17,411 in her computation of personal living expenses for 1990. The revenue agent testified that this amount represented the difference between the bank account balances and the analysis of personal living expenses for 1990 provided to respondent by petitioners. The revenue agent also testified that petitioners did not provide any explanations or canceled checks to support any other treatment of this amount. Petitioners also failed at trial to offer any explanation of the difference between the bank account balances and petitioners' calculation of their personal living expenses. Respondent's determination that petitioners' personal living expenses for 1990 include $17,411 of unexplained expenses will be sustained.

Petitioners also argue that respondent erred in determining that other unidentified expenses were personal living expenses. Petitioners have failed to identify the specific instances when this occurred and have failed to offer any proof that any additional unidentified expenses determined by respondent to be personal living expenses were not such. Petitioners have not proven by a preponderance of evidence that additional adjustments are warranted to respondent's calculation of their personal living expenses for the years in issue. Respondent's determination that unidentified expenses were personal living expenses will be sustained.

4.  JKY Income

Respondent now contends that she understated JKY's total receipts for 1991 by $36,455 because certain deposits were not included in the reconciliation of gross receipts. Respondent has conceded that she understated sales returns/chargebacks in 1991 by $32,039 in her initial determination. The correct amount of sales returns chargebacks for 1991 is $140,614.37. Respondent asks us to sustain her original Form 1120S pass-through adjustment for 1991 even though these computational adjustments respondent now seeks result in an increased deficiency. Petitioners contend that respondent has raised a new issue. This issue involves a new matter because the evidence necessary for resolution of it differs from that relevant to the original

determination. Respondent bears the burden of proof as to any new matter. Rule 142(a).

Respondent did not question the revenue agent regarding this alleged error in the notice of deficiency. Respondent presented us with proof of bank deposits, constituting gross receipts, into account number 62-00931 that she alleges were not included in the notice of deficiency. Petitioners agree that respondent has produced sufficient proof of this account balance, but they argue that this proof is not sufficient proof that this amount was omitted from respondent's determination in the notice of deficiency. Respondent has attempted to bolster her position by introducing a supporting schedule, a bank deposits account summary, and a bank deposit detail prepared by the revenue agent during the examination of petitioners' returns to show that this account balance was omitted from the determination in the notice of deficiency.

We have looked to these workpapers not for the truth of the facts and figures contained therein but for the presence or absence of deposits into account No. 62-00931. Upon examination of the revenue agent's schedules, we can see that no deposits were included for account No. 62-00931 for 1991 in calculations on certain schedules. However, many of the schedules have handwritten notations and various corrections that we cannot reconcile with respondent's argument. Because of these apparent revisions, we cannot be certain that these schedules reflect the

final product of the revenue agent, especially in light of her failure to testify regarding this omission. Respondent has failed to prove that she understated JKY's gross receipts for 1991 in making her determination.

At trial, Yoon also testified as to the existence of certain liabilities to his suppliers resulting from cash advances received from the suppliers. These liabilities, petitioners claim, increase JKY's nontaxable receipts. Respondent allowed $129,530 of other nontaxable receipts.

Petitioners have presented Yoon's testimony and several deposit slips with the names of JKY's Korean-owned suppliers listed next to amounts of the checks deposited as evidence of these debts. Yoon testified that no notes were executed, that no interest was charged, and that he could not recall when he repaid the debts. Yoon also testified that JKY had outstanding credit balances with the companies that loaned him money. At trial, respondent questioned why the suppliers would have loaned JKY cash instead of reducing the outstanding account balances. Yoon responded that there was a need for money at the time. Because JKY was a big customer of these suppliers and Yoon often entertained the suppliers to garner favor, it is not incredible that suppliers would advance to JKY relatively small amounts of cash (when compared to the purchases JKY was making from the suppliers). JKY's nontaxable receipts for 1991 should be

increased by $22,000 to reflect the advances from suppliers claimed by petitioners.

Petitioners now contend that credit card charges, in addition to those allowed by respondent, are deductible as business expenses. Respondent treated all payments on personal credit cards as personal living expenses. Petitioners argue that it was unreasonable for respondent to treat the payments in that manner. Petitioners claim that they are entitled to additional business expense deductions of $17,774.94 on JKY's 1990 return and $26,788.87 on JKY's 1991 return for expenses charged to personal credit cards. Petitioners have offered schedules of credit card charges prepared by Caufield that categorize each credit card expenditure. The underlying credit card statements are not part of the record in this case. Also, the schedules show that certain statements were not available at the time the schedule was created. Caufield testified at trial that he prepared the schedules and consulted Yoon only when Caufield was unclear as to the classification of a charge as business or personal.

Numerous items claimed as business deductions by petitioners appear to be for travel and entertainment, i.e., restaurant charges and airline charges. Petitioners claim that 100 percent of these expenses is deductible, ignoring the 80-percent limit on deductibility under section 274(n). Furthermore, to prove entitlement to deductions for travel and entertainment expenses,

the taxpayer must meet the specific substantiation requirements of section 274, including the date, time, place, amount, and business purpose of the expense as well as the business relationship of those entertained by the taxpayer. Meridian Wood Products Co. v. United States, 725 F.2d 1183, 1188 (9th Cir. 1984). Section 274 precludes our making an estimate, under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), with respect to travel and entertainment expenses. See, e.g., Meridian Wood Products Co. v. United States, supra at 1188-1190. Even if section 274 were not applicable, there is insufficient evidence here to support an estimate of petitioners' claimed travel and entertainment expenses. There is also insufficient evidence to support an estimate under Cohan v. Commissioner, supra, for the remaining claimed deductions that fall outside of the substantiation requirements of section 274, such as business repair expenses.

Petitioners have not indicated which expenditures have already been deducted on JKY's 1990 and 1991 returns. From the evidence before us, we cannot be certain that any of the claimed expenditures were actually for business purposes. Yoon did not testify as to the purpose of the expenditures. Also, from his testimony, it appears that Caufield, not Yoon, classified most of the expenditures on the schedules. We have been provided only with the amount of the alleged charges and the name of the place where the credit purchase was allegedly made. For the foregoing

reasons, Caufield's schedules are not reliable. Petitioners have failed to prove by a preponderance of the evidence JKY's entitlement to additional deductions. Respondent's determination that charges on personal credit cards are to be treated as personal living expenses will be sustained.

Conclusion

We have examined the arguments of petitioners that respondent's determination is arbitrary and erroneous and have determined that they are without merit.

We also conclude that petitioners' argument that respondent has failed to establish a likely source of income or to conduct a reasonable investigation of leads to negate the existence of nontaxable sources of income is without merit. Petitioners' claims of nontaxable sources were the alleged loans from friends and relatives and advances to JKY by suppliers. Respondent considered those claims made by petitioners during the examination, included some of the claimed liabilities in her net worth determinations, and determined others were not valid. Where relevant leads are not forthcoming from petitioners, respondent is not required to negate every possible source of income. Holland v. United States, 348 U.S. 121, 137 (1954). While we have adjusted the net worth determination to include other liabilities, such corrections do not invalidate respondent's entire determination. Hoffman v. Commissioner, 298 F.2d 784, 788 (3d Cir. 1962), affg. in part T.C. Memo. 1960-160.

Section 6651(a)(1) Addition to Tax

Respondent also determined that petitioners are liable for the section 6651(a)(1) addition to tax for 1991. Section 6651(a)(1) imposes an addition to tax for failure to file timely a return, unless the taxpayer establishes that the failure did not result from "willful neglect" and that the failure was due to "reasonable cause". The addition to tax equals 5 percent of the tax required to be shown on the return for the first month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. Sec. 6651(a)(1).

"Willful neglect" has been interpreted to mean a conscious, intentional failure or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). "Reasonable cause" requires the taxpayers to demonstrate that they exercised ordinary business care and prudence and were nonetheless unable to file a return within the prescribed time. Id. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a); Cluck v. Commissioner, 105 T.C. 324, 339 (1995). Petitioners failed to offer any evidence or explanation regarding the late filing of their 1991 return. Thus, respondent's determination that petitioners are liable for the section 6651(a)(1) addition to tax for 1991 will be sustained.

Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the underpayment of tax attributable to one or more of the items set forth in section 6662(b). Respondent asserts that the entire underpayment of petitioners' tax was due to negligence or intentional disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement, sec. 6662(b)(2). Because respondent raised the accuracy-related penalty in her answer, respondent bears the burden of proof on this issue. Rule 142(a).

"Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Petitioners' failure to maintain and to produce reliable records of their financial transactions and taxable income supports a conclusion of negligence. Crocker v. Commissioner, 92 T.C. 899, 917 (1989); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963). They cannot avoid the penalty based on reliance on their tax preparers because they did not provide the preparers with sufficient and accurate information to prepare their returns. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). The evidence justifies the penalty for negligence.

To reflect the foregoing and concessions by respondent,

<u>Decision will be entered</u>

<u>under Rule 155</u>.